### SLIP SCARF CO. v. BLANCHARD & PRICE.

(District Court, S. D. New York. May 10, 1913.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—NECKTIE.

The Keys patent, No. 923,534, for an improvement in neckwear, claims 2 and 3, *held* void for lack of invention, and claim 7 as broader than warranted by the specification. Claim 1, for a necktie having a portion of the inner side of the neckband cut away and a strip of antifriction

fabric substituted therefor, to prevent it from being torn by the rear collar button, was not anticipated and discloses invention; also *held* valid, as against the claim of prior use, and infringed.

In Equity. Suit by the Slip Scarf Company against Blanchard & Price for infringement of letters patent No. 923,534, for an improvement in neckwear, granted to W. A. Keys June 1, 1909. On final hearing. Decree for complainant.

Kenyon & Kenyon, of New York City (Robert N. Kenyon, of New York City, of counsel), for complainant.

Alan M. Johnson, of New York City, for defendant.

MAYER, District Judge. The neckwear art is narrow, and the improvements necessarily slight and simple, hence the difficulty of determining whether invention was shown in the "slip scarf" patent here under consideration.

For some years the two-fold turn-down collar has been in vogue, and in connection therewith the four-in-hand tie has been much worn. After a tie made of rough or antifriction material has been placed between the folds of the collar, and the collar is in position around the wearer's neck, it is something of a task to adjust the tie without injuring it, or, where the seam is caught by the rear collar button, without tearing it. In the ordinary manufacture of neckwear it has been the practice to fold the tie, and have the folds come together and then be secured by a row of stitching, which generally comes near or in the center of the neckband on the inner side, and thus is likely to engage the collar button.

Keys, a well-known manufacturer familiar with the art and appreciative of the commercial possibilities of any improvement therein, sought to overcome these difficulties. In his application for letters patent filed January 7, 1909, he stated:

"I have found that by the application, on the inside of the neckband, of a strip of very smooth fabric, which in its relation to the material from which the necktie is made is a relatively antifriction material, it is possible to overcome many of these difficulties; *and in conjunction* with this I have found that it is preferable to cut away a portion of the fabric of the inner part of the neckband which is covered by this strip of relatively antifriction material, thereby making the tie thinner at that point than it would otherwise be."

Letters were issued on June 1, 1909; the plaintiff corporation having, meanwhile, become the assignee. It is contended that the defendant corporation has infringed four out of the seven claims as follows:

"1. In a necktie, the combination of a neckband and two tying ends, a portion of the inner band only of the necktie cut away, and a strip of antifriction fabric substituted therefor.

"2. In a necktie, the combination of a neckband and two tying ends, a portion of the inner face only of the neckband consisting of a strip of substantially antifriction fabric and independent interlinings in the tying ends.

"3. In a necktie, the combination of two tying ends and a neckband, a portion of the inner side only of the neckband being made of a relatively antifriction fabric and an interlining in said necktie, substantially thinner in a portion of the neckband than in the tying ends."

"7. In a necktie formed of a two-ply elongated fabric, a portion of the inner ply of the necktie cut away, and a strip of fabric substituted therefor."

A study of the prior art requires a close analysis of the claims. On January 11, 1909, while the Keys application was pending, the Patent Office made the following requirement:

"The following claims are found to be patentable and are suggested to applicant for the purpose of interference. Applicant is required to make such claims on or before January 23, 1909, under rule 96. * * *

"5. A necktie formed of an elongated two-ply fabric and a filling piece confined between the plies in which both the two-ply fabric and the filling piece extend substantially throughout the length of the tie, and comprising relatively thick and soft end sections and a relatively thin and smooth intermediate section.

"6. A necktie formed of a two-ply covering fabric extending continuously throughout the length of the tie, and a filling piece confined between the plies in which an intermediate portion of the tie is substantially thinner and smoother than the end portions.

"7. A necktie comprising a cover and filling (interlining) in which the cover extends continuously throughout the length of the tie, and in which an intermediate portion of the tie is substantially thinner than the end portion."

Promptly, on January 22, 1909, the applicant disclaimed the subject-matter set forth in these claims 5, 6, and 7. He thus recognized as part of the prior art a neckwear construction in which the filling piece (or interlining) in its intermediate section or portion (1) was relatively thin and smooth; or (2) was substantially thinner and smoother than the end portions; or (3) was substantially thinner than the end portions. It also appears that when Keys originally filed his application he made the following broad claim:

"7. In a necktie, the combination of a neckband and two tying ends, a portion of the inner face only of the neckband being made of a relatively antifriction fabric of different material than the necktie proper."

This claim was rejected on February 5, 1909, upon the patent to Laverty No. 238,406. That was a patent for cementing the label to the inner face of the neckband. In Laverty's specification he points out that the then usual method of marking the titles on the bands of neckscarfs was to form the title by printing directly upon the "silk or satin face" of the band. While the claims do not describe the fabric of the label, it is manifest that the label was of some smooth material, and that this was the ground of rejection of Keys' original claim 7.

No ground for rejection was stated, but that was not necessary under the rule (66) of the Patent Office, where the pertinence of the reference is obvious as here. It is clear, then, that the use of antifriction material was old, and there are several exhibits in evidence (such as Complainant's 8, Defendant's G, N, and Q) with this feature, and I suppose it may even be regarded as matter of common knowledge that a smooth material will slip or move easily.

In addition to the effect of the disclaimer, reference to the Mitchell patent (No. 904,710) shows that there was no invention in employing independent interlinings in the tying ends. While Mitchell s neckband was elastic and flexible, and the Keys' neckband is inelastic and presumably strong, the idea of a thinner neckband and of independent interlinings must have been plainly disclosed to one skilled in the art.

There is no mystery in an interlining. It is old in the art, and is

merely a lining ordinarily concealed between other plies of the structure.

It should be noted that there is not any cutting away feature in either of these claims, and with this interpretation the complainant's expert agrees. (C. R. 280.)

From the knowledge available when Keys made his application, it follows that claims 2 and 3 are invalid for want of invention. Claim 1, however, does show patentable novelty. The question is close, but two considerations resolve the doubt in favor of complainant:

First. Notwithstanding several attempts, no one seems to have thought of cutting away a portion of the inner band of the necktie and substituting a strip of antifriction material therefor. Some of the previous patents show either a mutilation of the scarf or a device for the neckband which seems almost grotesque to the eye of a wearer of neckties, even though he may not be an expert. Powers in 1904 (No. 768,299), Pierce in 1906 (No. 833,083), Hoople in 1907 (No. 857,402), Reynolds in 1908 (No. 683,483), and Mitchell in 1908 (No. 904,710) failed to suggest in the remotest degree the cutting away feature of the Keys invention. The Davies patent, even if considered, does not disclose the invention under consideration.

What seems simple now was evidently a real problem, which remained unsolved until Keys, by his device, found that he could preserve the integrity of the tying ends, limit waste within commercial requirements, and produce a practicable, easily adjustable scarf of good appearance in an art where appearance is important. In this connection it must be remembered that Keys did not limit his neckwear to use with turn-down collars, and when worn with a standing collar the appearance of the neckband must be considered.

Second. While there is some controversy as to the success of the Keys scarf, I am satisfied that the evidence abundantly shows success, and consequently utility.

Claim 7 seems to me to be a sort of catch-all claim, not justified by the context. Keys was dealing with an antifriction fabric as an element of the slip scarf. This claim might very well be read to comprehend the substitution, for the cut-away part, of a thicker or heavier nonfriction material to strengthen the tie in the neckband. Indeed, complainant's expert (C. R. 284) endeavors to read into this claim some features which are not to be found in the wording of the claim considered by itself or in context. Broadly construed (as it must be), and in view of the prior art, it added nothing to the art. Had it been limited to a "thinner" strip, or to a "strip of thinner" fabric, it might have been sustained; but it is not so limited.

In considering the validity of these claims, I have not overlooked the testimony as to prior use. The contradictory statements of Dillon and Stevens raise a doubt which precludes sustaining this defense. Possibly trade reasons may have prevented Dillon from enlarging upon or corroborating the information given; but if his dates were right, the matter was of sufficient importance to his employers and the trade to justify a frank and helpful attitude. His refusals to answer have certainly not contributed to a belief in the accuracy of his dates. The

testimony of Troth is also too uncertain upon which to predicate a finding of prior use.

The next question is whether defendant's neckties, Complainant's Exhibits 3 and 4, infringe. There is much controversy and expert testimony as to the meaning of "cut away." Defendant claims that its neckties are radically different from those of complainant, in that in the Keys necktie a piece is snipped out or "cut away," while in the defendant's necktie the goods are shaped and cut out of the piece to form the narrow portion, and thus material waste or cutting away is eliminated.

There is no evidence as to how defendant's neckties are made; but I think it does not require much expert knowledge to see, even if they are made as stated, that there is the cutting away and substitution of antifriction material described in the Keys' specification and claims. Blanchard (the patentee of defendant's neckties) may have advanced a step from the manufacturing standpoint; but it would be drawing a very fine distinction to say that his necktie does not infringe claim 1.[1]

Finally, it cannot be held that the lined scarfs (Defendant's G, M, Q, and R, and Complainant's 8), are "cut away" in the sense described and used by Keys.

It is contended by the defendant that Keys was an exclusive licensee by virtue of paragraph 4 of the agreement between complainant and Keys, dated April 20, 1909. I am of the opinion that Keys was not an exclusive licensee, and therefore not a necessary party. Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923; Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504.

The complainant may have a decree as indicated, but without costs.